HALL, Judge.
Plaintiff brought this suit for workmen’s, compensation benefits on behalf of his minor son, Roy A. Tujague, Jr., against the compensation insurer of Winn-Dixie Louisiana, Inc., young Tujague’s employer. The District Judge, holding that plaintiff had not satisfactorily shown that the disability complained of by his son was caused by the accident alleged on, rejected plaintiff’s demand and dismissed his suit. Plaintiff appealed.
Plaintiff’s petition alleges that on May 20, 1961, his minor son, then aged 17, while unloading a truck for his employer, Winn-Dixie Louisiana, Inc., was struck and knocked to the ground by a “box” which fell' from a stack on the loading ramp, and that as a result of the blow Roy began to experience stomach pains which finally became so acute that he was admitted to Hotel Dieu Hospital where he underwent surgery for a condition which was diagnosed by the operating surgeon as “trau *869 matic pancreatitis with retro-peritoneal hemorrhage”.
Plaintiff originally prayed for an award of 400 weeks compensation plus medical expense, statutory penalties and attorney’s fees, hut, since his son had completely recovered from his disability prior to the trial, plaintiff reduced his claim to 11 weeks compensation plus medical expense.
The sole question presented by this appeal is whether plaintiff has sustained the burden of proving a causal connection between the accident of May 20, 1961 and the disability complained of by his son.
The accident occurred while Roy and another young man named Wexel were unloading boxes of tissue paper from a truck and stacking them on a loading platform. We are dependant upon Roy’s testimony for what occurred because no one else was present except Wexel and he did not actually see the accident.
Roy testified that several of the boxes, which weighed from 30 to 50 pounds each, fell from the stack on the loading platform and struck him in the lower back causing him to fall forward and to strike his stomach against the corner of another box lying on the ground. He said that he lay on the ground for a few minutes then got up and finished unloading the truck. Wexel testified that he heard the rumble of falling boxes and turned around to find Roy on the ground. He did not see the boxes strike Roy nor did he see him fall. He further testified that Roy was apparently uninjured, did not complain of any pain, made no mention of striking his stomach, but got up and helped him pick up the boxes.
Roy continued to work full time for his employer until he was laid off about a month later. He did not report the accident to his employer because he said he thought nothing of it.
He testified that about a week after the accident he experienced a slight pain in his stomach but thought that it was indigestion and took Rolaids for relief. The pain returned three or four days later according to him and thereafter recurred every three days. He stated that he paid no attention to the pain and told no one about it. On or about June 23 after he had been laid off he was seized with a severe stomach pain and vomited. The pain became more severe and on June 25 the family physician, Dr. Ciaravella, was called in. Dr. Ciaravella prescribed demerol and on June 27 sent Roy to the hospital. Roy did not respond to treatment but grew progressively weaker. X-ray photographs revealed that something was pressing on his duodenum, and on July 11 Dr. Ciaravella performed an exploratory operation and found that the pressure on the duodenum was caused by a large hema-toma in the retro-peritoneal space extending from the pancreas down to the right lateral gutter. The source of the bleeding, according to Dr. Ciaravella, was the pancreas which he found to be inflamed and bruised on its posterior surface and which exhibited “signs of trauma”. His final diagnosis was “pancreatitis due to trauma with retro-peritoneal hemorrhage”.
After the operation Roy recovered rapidly. He was discharged from the hospital on July 23 and was entirely recovered by September 9.
It was not until after Roy’s discharge from the hospital that any notification of the accident of May 20 was given to his employer or its insurer.
Before passing to a consideration of the medical testimony it is important to resolve a question of fact viz. did young Tujague receive a blow to his stomach or to the front of his body in the accident of May 20? He so testified. He admitted however that he never told anyone of the accident and that he never complained of any pain in the stomach or any upset stomach condition to anyone, not even to his mother and father with whom he resided. He further testified that Dr. Ciaravella was the first person he ever told of the accident and that he did not tell him until after the operation. He stated that while he was recuperating *870 in the hospital Dr. Ciaravella kept asking him every day whether he had had an accident and that having plenty of time in the hospital to think it over he finally remembered the accident of May 20. Before that he had never in his mind related his condition to the accident.
After his discharge from the hospital Roy gave a written statement to the defendant’s adjuster in which he described the accident. In this statement he made no mention of falling forward and striking his stomach on any object. In this statement Roy said that one box struck him in the back but he continued working because “my back didn’t bother me too much * * . It was about one month from when the accident happened that my stomach started giving me trouble”. In the demand which Roy’s father and mother addressed to the defendant after Roy’s operation no mention was made of a blow to the stomach.
The District Judge concluded, in view of these circumstances, that the stomach blow was an “after-thought” and that young Tujague had not received any blow to his stomach or to the front part of his body and that the only blow he received in the accident was “from a box which fell on his back”. In our opinion this conclusion of the District Judge is fully warranted by the record.
Dr. J. M. Ciaravella, Dr. J. T. Nix, and Dr. William Fisher, all general surgeons, testified on behalf of the plaintiff. Dr. Samuel B. Nadler, an internist, testified for the defendant.
As we have seen, the operating surgeon, Dr. Ciaravella, was of the opinion that the bruise which he observed on the posterior surface of the pancreas was caused by trauma, although he admitted that a bruise on the pancreas may be caused by disease. He testified that in his opinion the hemorrhaging into the retro-peritoneal space came from and was secondary to the pan-creatitis. He stated that traumatic pan-creatitis could result only from a blow to the stomach or to the front of the body.
None of the other medical experts agreed with Dr. Ciaravella’s diagnosis. Dr. Nix was of the opinion that the retro-peritoneal hematoma was occasioned by the rupture of some blood vessel in the back. He did not think young Tujague had pancreatitis at all and certainly not pancreatitis due to trauma. He stated that if he had had traumatic pancreatitis he would have to have been hospitalized within 24 hours. Besides, he agreed that in order to have a trauma of the pancreas the blow would have to come from the front of the body. He stated that it was possible a severe blow in the back could produce a retro-peritoneal hemorrhage which would manifest itself a month later, but admitted that a retro-peritoneal hematoma could proceed from causes other than trauma.
Dr. Fisher likewise ruled out traumatic pancreatitis. He agreed that such a condition could be caused only by a severe blow to the front of the body. He was of the opinion that the hematoma came from a blow to the back and that if there was any pancreatitis at all it was secondary and not due to trauma.
Dr. Nadler, the internist, who was called by the defendant was of the opinion that young Tujague was suffering from acute hemorrhagic pancreatitis; that this condition has many causes, including a viral or bacterial infection, and may cause the pancreas to have a bruised appearance, and to bleed into the retro-peritoneal space. He was of the opinion that young Tujague’s condition was not caused by trauma, and stated positively that he didn’t have a pan-creatitis earlier than June 26, basing this statement on laboratory tests made when Tujague was admitted to the hospital. And, like all of the other experts, Dr. Nadler was of the opinion that Tujague couldn’t have had a traumatic pancreatitis without having had a severe blow to the front of the body. It was also his opinion that it would take a severe trauma to the back to cause a retro-peritoneal hemorrhage.
We note that during the course of his treatment of young Tujague Dr. Ciaravella *871 had occasion to consult with Dr. Weilbae-cher, an internist, and although plaintiff did not call Dr. Weilbaecher to testify, the record shows that he was of the opinion that the pancreatitis was caused by irritation from the blood.
In a lengthy written opinion the District Judge reviewed all of the testimony and concluded that the accident of May 20 was of a minor nature and that plaintiff failed to prove that young Tujague had received any blow which could have caused the condition of traumatic pancreatitis which Dr. Ciara-vella said that young Tujague had suffered, or any blow severe enough to cause the retro-peritoneal hemorrhage which Dr. Nix and Dr. Fisher felt he might have suffered.
We are of the opinion that the record fully supports the District Judge’s conclusions.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.